UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

                                                  Ind. No.
                                                  18 cr 834 (PAE)

-against-


FUGUAN LOVICK,

                          Defendant.
--------------------------------------------------------x


# SENTENCING MEMORANDUM


Jeffrey G. Pittell
**MAHER & PITTELL, LLP**
*Attorneys for Defendant*
42-40 Bell Blvd., Ste. 302
Bayside, New York 11361
(516) 829-2299

## PRELIMINARY STATEMENT

This Sentencing Memorandum is submitted on behalf of Fuguan Ramadan Lovick.  Previously, pursuant to a Plea Agreement, Fuguan pleaded guilty to Counts Six and Seven of the Indictment.  Based upon the information set forth herein, coupled with the information in the Presentence Investigation Report ("PSR"), we respectfully request the Court impose a sentence of 84 months imprisonment on Count Seven consecutive to a sentence of one day imprisonment on Count Six.

## PERSONAL BACKGROUND

### Childhood

Fuguan had a turbulent childhood.  Looking back on it, he realizes he never experienced just being a "kid."

By the time he was born, his parents had already ended their relationship and lived apart from each other.  He lived with, and was raised by, his mother in the Bedford Stuyvesant neighborhood of Brooklyn.  Although his mother worked full-time, as an IRS employee, she earned  "barely enough" to support Fuguan and his brother.  Fuguan recalls his family as always being "broke" and living from paycheck to paycheck.

Growing up in "BedStuy," in the 1970's and 1980's, Fuguan was exposed to crime and violence on a daily basis.  Crack was openly sold on street corners.  The

sound of gunfire was a regular occurrence.  One day, when he was nine years old and walking to school, Fuguan saw someone shot to death a few feet in front of him.

Fuguan's exposure to crime and drug use was not limited to times he was on the street.  At times, Fuguan stayed with his father during weekends or school vacations. From Fuguan's perspective, his father -- who was a heroin addict -- "never grew up."  Throughout his childhood, whenever he was with his father, Fuguan saw him sniffing or shooting up heroin.  By the time Fuguan was nine years old, his father used Fuguan to sell drugs (for his father's benefit) knowing that, if Fuguan was caught by the police, he would only be prosecuted as a juvenile offender.  One time, when he was selling drugs for his father, Fuguan was robbed and pistol whipped.  He suffered a broken nose and the fracture never properly healed.  Even now, Fuguan has difficulty breathing through his nose and hears a "pop" whenever he sneezes.

### Parenthood and Adult Life

Fuguan's childhood was cut short when, at age fifteen, he became a father.  At that time, he and his girlfriend, had "no clue" on how to raise their daughter (Naquan Rogers who is now twenty-five years old).  He characterized himself as "a kid trying to raise a kid."  Not surprisingly, their relationship did not last.  When it ended, his

girlfriend retained custody of Naquan.  However, Fuguan has maintained contact with Naquan who now lives in Pennsylvania.

During 2008, when Fuguan was thirty years old, he moved to Connecticut to live closer to his girlfriend, Monique Pinkley, who resided there.  Approximately one year later their relationship ended.  However, Fuguan continued to live in Connecticut because he had a child with Ms. Pinkley.  While in Connecticut, he worked a variety of jobs, primarily earning minimum wage, including being: a sorter at a recycling center; a stock clerk at a warehouse; and, a janitor at a shopping center.

During 2016, Fuguan moved to Pennsylvania in order to live closer to Naquan who had recently given birth to a daughter (Fuguan's granddaughter).

### Involvement in the Offense and Acceptance of Responsibility

Fuguan's offense conduct in this case involved his firing a gun into the air while inside a hallway in the *Barclays Center* in Brooklyn.  The surveillance video shows Fuguan was with a group of people -- including some of the co-defendants -- who were being aggressively confronted, and likely on the verge of being be attacked, by a larger group of people.  The video shows a few New York City Police Officers were present in the hallway.  However, the Officers did not undertake action sufficient enough to defuse the encounter which was escalating into a potential brawl.

3

When confronted with this situation, Fuguan took matters into his own hands and fired a gunshot into the air.  The video depicts that, following the firing of the gun, the confrontation ended and the groups dispersed.

Fuguan fully accepts responsibility for his conduct.  He knows it was wrong and inexcusable.  Although the firing of the gun was not done with the intent to cause injury to anyone, Fuguan acknowledges this circumstance does not justify his sneaking a gun into the *Barclays Center*.  He is grateful the discharge of the gun did not lead to the injury, or death, of an innocent bystander (by a stray bullet) or anyone else.

In accepting responsibility for his conduct, Fuguan pleaded guilty and now faces a mandatory minimum sentence of seven years imprisonment.  In furtherance of his acceptance of responsibility, Fuguan has written a letter to the Court.  In his letter, he acknowledges his conduct was wrong and describes efforts he has undertaken, while in custody, to improve his life.  A full copy of his letter is as follows:

Dear your honor,

Good morning I hope your haveing a bless day and I will like to thank god that no one was injured due to my actions. wail incarcerated I obtained my 30 hour oshA and my Certificate in confined space's So upon my release I can find employment in the construction Field. For the past 11 years I been employed and I cant wait to get back to working. I Also want to apoligize to my mom, my children and my grandchildren For putting them threw this cause of my actions. I'm currently enrolled in G.E.D. Classes and I should be done with the classes by time I get sentence and also I'm not the gang banger that media or cooperating witnesses are saying I'm I have been gainfully employed for the past decade and I'm also not a threat to the community I just made a big mistake the night of my offense.

Thank yal
Fuqven lartez.

5

## GOOD CHARACTER

In anticipation of Fuguan's sentencing, his mother prepared a character letter on his behalf.   In pertinent part, she writes, "speaking with my son he is very ashamed, remorseful for his actions."   The full copy of her letter is as follows:

-----Original Message-----
From: Cynthia Lovick ███████████
To: clove2222 ██████
Sent: Tue, Dec 10, 2019 9:09 pm
Subject: Re: Fuquan Lovick

Fuquan Lovick

Your Honor

I am writing this letter to ask for leniency in the sentencing of my son Fuquan Lovick
My son Fuquan got caught in the steets with the wrong crowd, He was living in Ct,
trying to raise his son and then in PA, helping with his grandkids.

He had a very hard time paying child support and was not able to handle paying rent, and
paying child support which made him make bad choices and hang with not a good crowd.

Speaking with my son he is very ashamed, remorseful for his actions, not a good example
for his son, he was fighting with his son mother to be in his life . Fuquan was homeless,
could not pay rent and child support, and he made some bad decisions .

Your Honor I cant make any kind of excuses for my son actions, Im praying for leniency
in sentencing my son,

Your Honor Sir, thank you for taking time to read my letter

Ms.C.L.


being homeless, he really neede


Thank You Your Honor

## POST ARREST BACKGROUND

## Current Life in Custody

Following his firing of a gun in the *Barclays Center*, Fuguan was arrested by New York City Police and prosecuted, for Criminal Possession of a Weapon and other charges, in Kings County Supreme Court.   During the pendency of this prosecution, Fuguan was housed at Rikers Island.   Following the filing of the Indictment in this case, he was transferred to MCC New York ("MCC") where he currently is in custody.   Regarding his tenure in custody, two circumstances are relevant for the Court's sentencing consideration.

### *Conditions at MCC*

The conditions of MCC have deteriorated to the point where, as a sentencing factor, the Court should take into consideration the horrific living environment -- which includes vermin infestations, sewage backups, a lack of proper medical care, and, "lockdowns" -- present within the facility.   The conditions have become so bad that Judge Berman, by letter published November 24, 2019 in *The New York Times*, commented:

> **There is at the very least anecdotal evidence that chronic understaffing, subpar living conditions, violence, gang activity, racial tension and the prevalence of drugs and contraband are the norms in many of our prisons.   These conditions are worsened by the absence of necessary services, including**

**meaningful mental health and drug rehabilitation, not to mention adequate heat and hot water.** [1]

At times, especially on weekends, Fuguan (along with all the inmates) was kept on "lockdowns" which lasted as long as one week. A lockdown is a mind numbing experience. During a lockdown, Fuguan was locked in his unit (a dorm style cell) with twenty-five other inmates for 24 hours per day. While on the lockdown, Fuguan was not allowed to access email, make phone calls, go to the law library, obtain reading material from the general library, visit family, attend programs or participate in recreation time. Other than walking in circles in the unit, or socializing with other inmates in the unit, there was no mental stimulation during a lockdown. Despite being highly punitive, the lockdowns were not inflicted due to misbehavior. They

---

[1]

A copy of Judge Berman's letter is included in the Exhibits. Additional information about the state of MCC is set forth in:

Aratani, L., The Guardian, August 17, 2019, Rats and raw sewage: Jeffrey Epstein jail blighted by 'horrible' conditions. Online citation: https://www.theguardian.com/us-news/2019/aug/17/jeffrey-epstein-new-york-metropolitan-correctional-center-jail

Stahl, A, The Gothamist, June 19, 2018, Prisoners Endure A Nightmare 'Gulag' In Lower Manhattan, Hidden In Plain Sight. Online citation: https://gothamist.com/news/prisoners-endure-a-nightmare-gulag-in-lower-manhattan-hidden-in-plain-sight

were imposed by the BOP due to staffing shortages or other employment issues.  In essence, Fuguan was punished and sanctioned for no reason.

*Self Improvement*

While in custody, at both Rikers Island and MCC, Fuguan undertook efforts to improve his life.

He is a voracious reader.  He estimates he has read more than one hundred twenty books since he has been in custody.  One genre which he enjoys is the "urban novel."  The stories typically take place in crime ridden inner city neighborhoods.  However, sometimes they present stories of hope where the protagonist seeks to escape from a life on the "streets."

Physically, he keeps fit by doing 200 push ups and sit ups every day.

Spiritually, he is a devout Muslim.  He prays five times a day.  Every day, he reads the Koran and frequently engages in discussions about it with fellow Muslim inmates.

Educationally, he takes any course which is available.  At MCC, he has taken courses on Marketing, Public Speaking, Parenting and Music Appreciation.  He is also studying for his GED.  When he was at Rikers Island, he took the following courses:

| Vocational Training | Self-Improvement |
|---|---|
| OSHA Certification - 4 hour course in *Confined Space* | *Networking with Family and Friends* |
| OSHA Certification - 30 hour course in *Safety Training Awareness* | *Building Skills for Successful Re Entry & Employment* |
|  | *What Do I Personify* |

**Examples of Certificates earned by Fuguan while in custody (additional ones are in the Exhibits)**





## REQUESTED SENTENCE

We respectfully request the Court impose a sentence of **84 Months imprisonment on Count Seven consecutive to a sentence of one day imprisonment on Count Six** (the "Requested Sentence").

We contend the Requested Sentence is an appropriate disposition based upon the following reasons:

***First,*** 18 U.S.C. §3553(a)(4) requires a sentencing court to take the advisory sentencing guidelines into consideration.  For Court Six, the advisory Sentencing Guideline range is 6 to 12 months imprisonment.  For Count Seven, the advisory Sentencing Guideline range, which is the statutory mandatory minimum sentence, is 84 months imprisonment to be run consecutive to the term imposed on Count Six.

By the Requested Sentence, we are requesting the Court impose a Guideline sentence on Count Seven and impose a modest variance, from the Guideline minimum sentence, on Count Six.

As noted in PSR, Fuguan's Total Offense Level for Count Six is 10 and his Criminal History Category ("CHC") is in Category I. As such, his advisory Sentencing Guideline range is 6 to 12 months and is within Zone B on the Sentencing Guideline Sentencing Table.  For sentencing ranges within Zone B, the advisory Sentencing Guidelines provide, the minimum term may be satisfied by, "a sentence of imprisonment that includes a term of supervised release with a condition that

substitutes community confinement or home detention [*i.e.*, one day of home detention or community confinement for one day or imprisonment], **provided that at least one month is satisfied by imprisonment**." U.S.S.G. §5C1.1(c)(2) (emphasis added).   Upon his release from prison, in the normal course,  Fuguan will be subjected to a term of community confinement.  As such, by requesting a term of imprisonment of one day on Count Six, in essence, we are requesting a modest variance down from one month imprisonment to one day imprisonment.

As the Supreme Court noted, in *Rita v. U.S.*, the Sentencing Guidelines are meant to only "reflect a rough approximation of sentences that might achieve §3553(a)'s objectives." 127 S.Ct. 2456, 2464, 551 U.S. 338 (2007).  In light of this holding, we submit that a variance down from one month to one day is not abhorrent to §3553(a)(4).

***Second,*** we submit the Requested Sentence will not result in an unfair disparity between defendants with similar conduct and similar records as required by 18 U.S.C. §3553(a)(6).

The sentencing of three co-defendants Butler, Walter and Martin are relevant in the context of disparity.  A summary of their guilty plea counts and sentences are as follows:

| Co-Def. | Guilty Plea Counts Guideline Range | Sentence Imposed |
|---------|-----------------------------------|------------------|
| Butler | Count 5 (924(c) - possession) 60 month mandatory minimum | 60 months (mandatory minimum) |
| Walter | Count 4 (VICAR) Guideline range = 8 to 14 months<br><br>and<br><br>Count 5 (924(c) - possession) 60 month mandatory minimum | 2 months on Count 4 (a variance of 6 months below Guideline minimum)<br><br>and<br><br>60 months (mandatory minimum) on Count 5 |
| Martin | Count 1 (Racketeering) Guideline range = 77 to 96 months | 66 months (a variance of 11 months below Guideline minimum) |

According to the Government's sentencing submissions, all three of these defendants were active members of Nine-Trey. All three were involved in at least two acts of violence involving guns, to wit: the April 3, 2018 gunpoint robbery and aiding and abetting the July 16, 2018 shooting where an innocent bystander was shot.

In comparison, Fuguan was only involved in one act of violence (the *Barclays Center* shooting) and no one was injured. In addition, Fuguan did not actively associate with Nine-Trey. At the time of his offense, he was living in Pennsylvania and, for many years prior, had been living in Connecticut. On the date of the offense, he was visiting New York in order to attend the boxing match at the *Barclays Center*.

As noted above, on their §924(c) gun charges, both Butler and Walter were sentenced to the statutory mandatory minimum sentence. Walter, like Fuguan, also pled guilty to a VICAR charge and received a six month variance from his applicable advisory Sentencing Guideline range. Martin, who is alleged to have had a leadership position, pled guilty to the RICO charge and received a variance of 11 months from his applicable advisory Sentencing Guideline range.

By the Requested Sentence, we respectfully request a comparable sentencing consideration be given to Fuguan. On Count Seven, his §924(c) gun charge, we request a Guideline sentence which is also the statutory mandatory minimum sentence (84 months). On Count Six, his VICAR charge, we request a modest six-month variance. We contend a six-month variance for Fuguan is reasonable as both Walter and Martin received variances of this amount or greater.

Moreover, the Requested Sentence is reasonable as Fuguan will still end up with a sentence higher than these three co-defendants despite his not being an active member of Nine-Trey nor being involved in multiple acts of violence.

**Third,** the conditions Fuguan had to endure at MCC should be a factor the Court takes into consideration. In pertinent part, 18 U.S.C. §3553(a)(2)(A), provides "the court shall impose a sentence sufficient, but not greater than necessary, to comply with . . . the need for the sentence imposed . . . to provide **just punishment** for the offense." (Emphasis added). We submit the conditions at MCC are a basis

for a sentencing variance under this section as they exceed the notion of "just punishment." We note that, pre-*Booker*, when downward departures were a basis for sentencing below the Guidelines, poor prison conditions justified imposition of below Guidelines sentences. *See e.g., U.S. v. Carty*, 264 F.3d. 191, 196 (2d Cir. 2001) (holding that harsh pre-sentence confinement conditions may be a permissible basis for downward departure). Here, the same rationale should be applied in consideration of a sentencing variance below the advisory Sentencing Guidelines.

**Fourth,** 18 U.S.C. §3553(a)(1) requires a sentencing court to consider the "history and characteristics of the defendant." As such, we urge the Court to consider Fuguan's personal background as set forth in this Memorandum and the PSR.

**Fifth,** when he is released from prison, it will be even more difficult for Fuguan to obtain a job. When he applies for a job, if a potential employer performs a background check, the employer will learn Fuguan has a federal felony conviction for gang-related gun offense. This disclosure will dissuade many employers from hiring him. Even if only a minimal background check is performed -- for example, a *Google* search of the name "Fuguan Lovick" -- a plethora of media reports about his involvement in *Barclays Center* shooting are reported. In fact, almost every entry on the first page of a *Google* search refers to this case. Undoubtedly, this information will scare away many potential employers. For the Court's reference, a copy of the first page of a sample "Fuguan Lovick" *Google* search is on the following page:



12/7/2019

Google

fuguan lovick

All | Images | Maps | News | Videos | More | Set ings | Tools

About 5,730 results (0.45 seconds)

**Member Of Nine Trey Gangsta Bloods Pleads Guilty To April ...**
https://www.justice.gov › ... › News › Press Releases ▾
May 9, 2019 - Geoffrey S. Berman, the United States Attorney for the Southern District of New York, announced that **FUGUAN LOVICK**, a/k/a "Fu Banga," pled ...

**Images for fuguan lovick**

→ More images for fuguan lovick

Report images

**9 Trey gangster in Tekashi69's crew pleads guilty to firing gun ...**
https://www.nydailynews.com › new-york ▾
May 9, 2019 - "Today, **Fuguan Lovick** admitted to a brazen and dangerous act of violence. While inside the Barclays Center with Tekashi69 and other Nine ...

**Fuguan Lovick | Welcome To KollegeKidd.com**
https://kollegekidd.com › news › tag › fuguan-lovick ▾
View this post on Instagram A post shared by Kollege Kidd (@kollegekidd) on Nov 21, 2018 at 4:30pm PST Tekashi69 is facing racketeering and firearms ...

**Accused Nine Trey 'Shooter' Pleads Guilty in Tekashi 6ix9ine ...**
https://www.complex.com › music › 2019/05 ▾
May 9, 2019 - **Fuguan Lovick**, an associate of Tekashi 6ix9ine, admitted to brandishing a gun at the Barclays Center last April.

**Government IDs Defendant in Tekashi 6ix9ine Case as a ...**
https://www.complex.com › music › 2019/04 ▾
Apr 18, 2019 - **Fuguan Lovick**, an associate of Tekashi 6ix9ine, "almost always carried a firearm" according to the Feds, and they've got witnesses to back up ...

**Complex - Fuguan Lovick, an associate of Tekashi 6ix9ine ...**
https://www.facebook.com › posts › fuguan-lovick-an-associate-of-tekashi... ▾
**Fuguan Lovick**, an associate of Tekashi 6ix9ine, "almost always carried a firearm" according to the Feds.

**Fuguan Lovick, an associate of Tekashi 6ix9ine, "almost ...**
https://m.facebook.com › complex › posts
Apr 18, 2019 - **Fuguan Lovick**, an associate of Tekashi 6ix9ine, "almost always carried a firearm" according to the Feds, and they've got witnesses to back up ...

**Tekashi's 6ix9ine's Associate Fu Banga Admits To Shooting ...**
https://allhiphop.com › News ▾
May 10, 2019 - **Fuguan** "Fu Banga" **Lovick** admitted to being the gunman who fired off a shot inside of he Barclay's Center during an April 2018 boxing match ...

**Tekashi69 Has No Ties To Alleged Affiliate Arrested In ... - Vibe**
https://www.vibe.com › 2018/05 › tekashi69-has-no-ties-to-alleged-affiliat... ▾
May 8, 2018 - TMZ reports Brooklyn native **Fuguan Lovick** was charged with first-degree reckless endangerment for firing a weapon at the arena during the ...

**Sixth,** in consideration of 18 U.S.C. §3553(a)(2)(B) & (C) we submit the Requested Sentence provides an adequate deterrence to potential future criminal conduct and alleviates any concern about protecting the public from further crimes.

The Requested Sentence will result in Fuguan being sentenced to a term of seven years imprisonment. The length of this term will readily satisfy the need for specific deterrence and protection of the general public as Fuguan will be in his late forties when he is released from prison. We submit that, at that age, the likelihood of recidivism will be low.

In addition, since the Requested Sentence of seven years is a substantial term of imprisonment, it will send a message of general deterrence.

**Seventh,** by his guilty plea and letter to the Court, Fuguan has fully accepted responsibility for his actions. He is remorseful and acknowledges what he did was wrong.

**Eighth**, 18 U.S.C. §3553(a)(2)(D) requires a sentencing court to consider the need for vocational or educational purposes. We submit that seven years is more than enough time to enable Fuguan to take advantage of the educational and vocational programs -- which Fuguan has demonstrated he has an interest in pursuing -- offered at his designated facility.

**Ninth,** §3553(a)(2)(A) states a sentencing court shall consider the need for the sentence "to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense." We submit the Requested Sentence -- a term of seven years imprisonment which will be followed by a term of supervised release -- adequately reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense.

## CREDIT FOR TIME IN NEW YORK STATE CUSTODY

18 U.S.C. §3585(b) states:

Credit for Prior Custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1)     as a result of the offense for which the sentence was imposed; or

(2)     as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

Pursuant to this provision, we respectfully request the Court indicate, in the Judgment of Conviction, that Fuguan be given jail time credit for time he was in New York City custody during the period from May 6, 2018 through November 19, 2018.

Initially, Fuguan was arrested on May 6, 2018, by the NYPD, for his involvement in the *Barclays Center* shooting. Following his arrest, he was held in

18

New York City custody, at Rikers Island, in lieu of $50,000 bail.  Subsequently, he was indicted, and prosecuted in Kings County Supreme Court, under Indictment No. 3499/2018, for Criminal Possession of a Weapon and other charges (the "Brooklyn Case").  On November 19, 2018, he was transferred to this District, pursuant to a *writ of habeas corpus ad prosequendum*, for prosecution on the Indictment which had been filed in this case.  Thereafter, Fuguan has remained in federal custody.  Due to the pending prosecution in this case, the Brooklyn Case was dismissed.

Under 18 U.S.C. §3585(b)(1), Fuguan is entitled to receive jail credit for the six months he spent in New York City custody on the Brooklyn Case.  Since both the Brooklyn Case and matter at bar are prosecutions for same incident (to wit: the firing of a gun in the *Barclays Center*), the time Fuguan spent at Rikers Island was the "result of the offense for which the sentence was imposed . . . that has not been credited against another sentence."  18 U.S.C. §3585(b)(1).

However, following imposition of sentencing in this case, in determining Fuguan's release date, we are concerned the BOP will deem the date of his federal arrest, November 19, 2018, as the starting date for the calculation of Fuguan's release date.  The PSR does not make any reference to the Brooklyn Case and we doubt the BOP will undertake a criminal history search in order to ascertain if the prosecution at bar had originally commenced as a state case before becoming a federal one.  As

19

such, absent any notation in the Judgment of Conviction, the BOP might not be aware that Fuguan was imprisoned during the period from May 6, 2018 through November 19, 2018.  Similarly, the BOP might not be aware that this period of imprisonment was imposed as a result of the offense and has not been credited against any other sentence.  Accordingly, in order to ensure the BOP is aware of this circumstance, and to ensure the custodial period from May 6, 2018 through November 19, 2018 is credited toward the sentence in this case, we request an appropriate notation be made on the Judgment of Conviction.

## CONCLUSION

Wherefore, based upon the foregoing, we submit the Requested Sentence of a term of 84 months (on Count Seven) and a consecutive sentence of one day imprisonment (on Count Six) is a fair and just sentence in this case.

Dated:      January 27, 2020
            Bayside, NY

                        Respectfully submitted,
                        /s/
                        Jeffrey G. Pittell

cc:    Government Counsel of Record (By ECF)
       Fuguan Lovick

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

UNITED STATES OF AMERICA

                                       Ind. No.
                                       18 cr 834 (PAE)

-against-


FUGUAN LOVICK,

                            Defendant.

---------------------------------------------------------x




**EXHIBITS TO SENTENCING MEMORANDUM**


| Item | Page # |
|---|---|
| **Certificates earned by Fuguan Lovick while in custody** | **1-6** |
| **Letter by Hon. Richard M. Berman to NY Times** | **7-9** |




<div align="center">

Jeffrey G. Pittell
**MAHER & PITTELL, LLP**
*Attorneys for Defendant*
42-40 Bell Blvd., Ste. 302
Bayside, New York 11361
(516) 829-2299

</div>

Ex. pg. 1



# CERTIFICATE OF COMPLETION

*This certificate is awarded to*

## FUQUAN LOVICK

*for your completion of the Re-entry Education program*

### Marketing Basics

*October 22, 2019*

A. Delgado, MCC New York Education Department



# CERTIFICATE OF COMPLETION

### This certificate verifies that

## Fuguan Lovick

has successfully completed the 4.0-Hour Occupational Safety and Health Administration
Outreach Training Course in Confined Space on **October 26, 2018.**

**Robert Camara**_____, Authorized Outreach Trainer **14-000106449** (OSHA)

As an OSHA Outreach Training Program trainer, I affirm that I have conducted this OSHA Outreach Training
Program training class in accordance with OSHA Outreach Training Program requirements. I will document this
cl. . . . . . . . . . . . ing Organization. Upon successful review of my documentation, I will
. . . . . . . within 90 calendar days of the end of the class."

Ex. pg. 3

 

# CERTIFICATE OF COMPLETION

### This certificate verifies that

## **Fuguan Lovick**

has successfully completed the 2.5-Hour Occupational Safety and Health Administration Outreach Training Course in **Fall Protection** on **November 9, 2018.**

**Robert Camara**_____, Authorized Outreach Trainer <u>14-000079469</u> (OSHA)

As an OSHA Outreach Training Program trainer, I affirm that I have conducted this OSHA Outreach Training Program training class in accordance with OSHA Outreach Training Program requirements. I will document this class to my OSHA Authorizing Training Organization. Upon successful review of my documentation, I will provide each student their course completion card within 90 calendar days of the end of the class."

Certificates



# Congratulations to

## Juquan Lovick

In receiving this certificate in recognition of

### Successfully completing the

**Networking with Family and Friends**

Comprised of
What is Networking
Developing Your Networking Team!
Networking with Friends and Family
Fears & Introduction for Networking

**FEDCAP**
S.M.A.R.T.
The Power of Possible

K. Clark
Fedcap S.M.A.R.T. Facilitator

Sheila Gordon
Fedcap S.M.A.R.T. Supervisor



# Congratulations to

## Fuguan Lovick

In receiving this certificate in recognition of
Successfully completing the

Building Skills for Successful Re-Entry & Employment

Comprised of

Skills, Abilities, Interest and Goals
Preparing for the interview
Application and resumes
Cover Letters, References and following up

Halbert Clark
Fedcap S.M.A.R.T. Facilitator

**FEDCAP**
S.M.A.R.T
The Power of Possible

Linda Fowler
Fedcap S.M.A.R.T. Supervisor

Ex. pg. 6

# Congratulations to

## Fuguan Lovick

## In receiving this certificate in recognition of

## Successfully completing the

**What Do I Personify**
Comprised of
Where Do I Get My Values
What Is My Personality
When to Show Gratitude
Why Moods Matter

**FEDCAP**

S.M.A.R.T
The Power of Possible

*H. Clark*
Fedcap S.M.A.R.T. Facilitator

*Andre Cartier*
Fedcap S.M.A.R.T. Supervisor

© 2017 Great Half

Opinion | Jeffrey Epstein's Death Shows the Need for Prison Reform - The New York Ti...

Case 1:18-cr-00834-PAE   Document 413   Filed 01/27/20   Page 29 of 31

Ex: pg. 7

*The New York Times*

**LETTERS**

# Jeffrey Epstein's Death Shows the Need for Prison Reform

The circumstances of his death warrant a full accounting, the judge in the criminal case says. Also: Breath testing of drivers; extreme-risk gun laws; Gauguin's art and personal flaws.

Nov. 24, 2019

**More from our inbox:**

Alcohol Breath Testing

From a Sandy Hook Dad: Keeping Guns Out of the Wrong Hands

Tear Down Gauguin?

Ex: pg. 8



The Metropolitan Correctional Center in Manhattan.  Haruka Sakaguchi for The New York Times

**To the Editor:**

Re "Guards Napped by Epstein Cell, Indictment Says" (front page, Nov. 20):

The indictment of two Metropolitan Correctional Center guards for not checking on inmates on the night of Jeffrey Epstein's death is not the full accounting to which Mr Epstein's family, his alleged victims and the public are entitled.

We all agree that it is unthinkable that any detainee, let alone a high-profile detainee like Mr. Epstein, would die unnoticed at the Metropolitan Correctional Center. It is the job of the Bureau of Prisons to ensure the safety and security of federal inmates.

It would be a tragic and costly missed opportunity for the Bureau of Prisons and the United States attorney general to fail to undertake — and to make public — an in-depth evaluation of prison conditions (not only at the M.C.C.) and to carry out appropriate reforms.

Opinion | Jeffrey Epstein's Death Shows the Need for Prison Reform - The New York Ti...

Case 1:18-cr-00834-PAE   Document 413   Filed 01/27/20   Page 31 of 31

Ex: pg. 9

There is at the very least anecdotal evidence that chronic understaffing, subpar livin conditions, violence, gang activity, racial tension and the prevalence of drugs and contraband are the norms in many of our prisons. These conditions are worsened by the absence of necessary services, including meaningful mental health and drug rehabilitation, not to mention adequate heat and hot water.

Richard M. Berman
New York
*The writer, a United States district judge, presided over the Epstein criminal case in the Southern District of New York.*