

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 18, 2022

**BY ECF**

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      **Re:**    ***United States v. Fuguan Lovick*, S9 18 Cr. 834 (PAE)**

Dear Judge Engelmayer:

      The Government writes in opposition to defendant Fuguan Lovick's (the "defendant" or "Lovick") June 1, 2022 motion to vacate his conviction on Count Seven of the above-referenced Indictment, pursuant to 28 U.S.C. § 2255 ("Def. Mot.," ECF No. 640). The defendant's claim is procedurally barred. In addition, because Count Six is a crime of violence – undisturbed by the United States Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021) – the defendant's conviction on Count Seven remains valid, and his motion should be denied.

## I.  Background

### A.  Offense Conduct, Guilty Plea and Sentence

      The defendant was a member of the Nine Trey Gangsta Bloods ("Nine Trey"), a violent set of the Bloods gang. As set forth more fully in the Government's sentencing submission, dated February 3, 2020 (ECF No. 416), the defendant shot above the heads of rival gang members inside the Barclays Center on April 21, 2018. (*Id.* at 1.) The defendant arrived with Daniel Hernandez, a/k/a "Tekashi 6ix 9ine," Roland Martin, a/k/a "Ro Murda," Kifano Jordan, a/k/a "Shotti," Denard Butler, a/k/a "Drama," Jesnel Butler, a/k/a "Ish," and Faheem Walter, a/k/a "Crippy," among others. Hernandez was scheduled to sing the entrance song for a boxer who had a match that night. While in a hallway in the Barclays Center, the defendant and other Nine Trey members encountered the entourage of a rival rapper, who was a member of a different Bloods set. During the altercation, Lovick removed a gun he had hidden in his shoe and fired the gun in the air over the rival gang members' heads. Afterwards, the rival rapper ran towards the defendant and other Nine Trey members, and Lovick can be seen on the surveillance video holding up the Nine Trey hand sign. (*See* GX 603A.)

      The defendant was arrested on May 6, 2018 and was held in state custody until he was transferred to federal custody on November 27, 2018. On May 9, 2019, the defendant pleaded

guilty to Counts Six and Seven of the S9 18 Cr. 834 Indictment, pursuant to a Plea Agreement. During his allocution, the defendant admitted that:

> I was a member of 9 Trey. On April 21, 2018, we were in the Barclay Center, and I was in the Barclay Center with other members of 9 Trey. I brought a gun with me. While we were walking down the hallway, we were approached by a large group of people from another gang. I pulled out a gun and I shot up in the air to scare them away. I did that to maintain my position with 9 Trey.

(May 9, 2019 Plea Transcript ("Plea Tr.") at 30: 6–13.)[1]

The Plea Agreement calculated a Stipulated Guidelines Range of 90 to 96 months' imprisonment, with a mandatory minimum of 84 months. On February 12, 2020, the Court sentenced the defendant to 85 months' imprisonment – one month on Count Six, and 84 months on Count Seven, to be served consecutively – to be followed by three years' supervised release.

## B. The Defendant's Motion

On June 1, 2022, the defendant filed a motion seeking vacatur of Count Seven of the Indictment on the grounds that the Supreme Court's decision in *Borden v. United States* created a new substantive rule that no longer makes the crime charged in Count Six – Assault with a Dangerous Weapon in Aid of Racketeering – a crime of violence that would support the convction in Count Seven under 18 U.S.C. § 924(c).

In *Borden*, the Court held that, in the context of the Armed Career Criminal Act, an offense that criminalizes reckless conduct is not a violent felony. The Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e), increases the statutory maximum sentence, and requires a 15-year mandatory minimum sentence, if a defendant is convicted of being a felon in possession of a firearm following three previous convictions for a "violent felony" or "serious drug offense." 18 U.S.C. § 924(e)(1). The statutory definition of a violent felony has three clauses: the "elements" clause, 18 U.S.C. § 924(e)(2)(B)(i); the "enumerated offenses" clause, 18 U.S.C. § 924(e)(2)(B)(ii); and the residual clause (*id.*), which the Supreme Court declared void for vagueness in *Johnson v. United States*, 576 U.S. 591 (2015). In determining whether a state offense qualifies under the elements or enumerated offenses clauses, courts apply a "categorical approach," under which the facts of a given case are irrelevant. The focus is instead on whether the elements of the statute of conviction satisfy the elements clause or include the "generic" elements of an enumerated offense.

The central question in *Borden* was whether an offense that can be committed recklessly— in that case, Tennessee aggravated assault, in violation of Tenn. Code Ann. § 39-13-102(a)(2)

---

[1] The defendant attempted to give an allocution earlier in the proceeding that did not satisfy the elements of the crimes charged. (Plea Tr. at 22: 12–25.) However, after consultation with his attorney, the defendant ultimately provided a sufficient allocution.

(2003)— "has as an element the use, attempted use, or threatened use of physical force against the person of another." The Court held that it does not. *Borden*, 141 S. Ct. at 1825.

The plurality[2] explained that the Court's prior decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), "confirms [its] conclusion." *Borden*, 141 S. Ct. at 1827. "*Leocal* held that negligent conduct falls outside a statutory definition much like the elements clause—one requiring the use of physical force 'against the person or property of another.'" *Id.* (quoting 18 U.S.C. § 16(a)).

The defendant argues that *Borden* requires vacatur of his conviction on Count Seven because New York Menacing in the Second Degree, which is cited in Count Six of the Indictment, is no longer a crime of violence.

## II.  Applicable Law

Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted).

A prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quotation marks and citation omitted); *United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). This bedrock principle, which arises from concerns about finality in criminal judgments, finds practical expression in the rule that a court may not consider on a Section 2255 motion a claim that could have been raised, but was not raised, on direct review. Such a claim has been "procedurally defaulted." *Bousley*, 523 U.S. at 622; *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal.").

Failure to raise a claim on direct review results in procedural default even where there has been a change in the substantive criminal law, announced after the defendant's conviction became final, lending legal support to his claim.[3] *See, e.g., Bousley*, 523 U.S. at 617–24 (concluding that

---

[2] Justice Thomas concurred in the Court's judgment based on a different rationale.

[3] *Borden* is a "new rule," because the result "was not dictated by precedent." *See Chaidez v. United States*, 568 U.S. 342, 347 (2013) (reiterating that a decision announces a new rule "if the result was not dictated by precedent") (emphasis and internal quotation marks omitted); accord *Edwards*

defendant had procedurally defaulted claim based on new rule of substantive criminal law announced after his conviction became final); *Thorn*, 659 F.3d at 231-33 (same); *Fordham v. United States*, 706 F.3d 1345, 1349-51 (11th Cir. 2013) (same); *Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) (same); *see also Harrington v. United States*, 689 F.3d 124, 128– 29 (2d Cir. 2012) (confirming that procedural default rules govern review of claim based on "new substantive rules of federal criminal law" announced after defendant's conviction became final). A procedurally defaulted claim cannot be entertained unless the movant "can first demonstrate either [1] 'cause' and 'actual prejudice,' or [2] that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); and i, 477 U.S. 527, 538 (1986)).

To show "cause" for failure to raise the claim on direct appeal, a defendant must demonstrate that "'some objective factor external to the defense'" prevented him from raising it, *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Carrier*, 477 U.S. at 488), "such as a claim that 'is so novel that its legal basis [was] not reasonably available to counsel' kept him from raising the claim on direct appeal" (commonly referred to as the "novelty" or "futility" ground). *Whitman v. United States*, 754 F. App'x 40, 42 (2d Cir. 2018) (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)).[4]

"The futility test to excuse a default is strict: 'the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all.'" *Thorn*, 659 F.3d at 233 (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)). Thus, the mere fact that the defendant's claim rests on the Supreme Court's ruling in *Borden*, which was not announced until after his conviction became final, does not establish that the basis for the claim was not reasonably available on direct review. *Id.* To the contrary, if the claim had been or was being raised by others at the time of direct review, it was "reasonably available," even if the claim would have been "unacceptable to [the direct appellate] court at that particular time." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted) (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)) (rejecting assertion of cause based on purported novelty of issue where reported

_____

*v. Vannoy,* 141 S. Ct. 1547, 1555 (2021). A "new" rule applies retroactively on collateral review only if it is "substantive." *Edwards*, 141 S. Ct. at 1562. In the Section 924(c) context, *Borden* is substantive because it narrows the scope of a criminal statute: using or carrying a gun during and in relation to a crime that could be committed recklessly, or possessing a gun in furtherance of such a crime, no longer qualifies as an offense under the statute. *See Bousley v. United States*, 523 U.S. 614, 620-21 (1998) (holding that the rule in *Bailey v. United States*, 516 U.S. 137 (1995), which narrowed the scope of the term "use[ ]" in Section 924(c), applied retroactively to cases on collateral review).

[4] As the Second Circuit recognized, the fact that a defendant could have raised a claim on appeal and did not do so—thus defeating "cause" for the purposes of procedural default—does not mean that the "failure to raise the argument constitutes ineffective assistance of counsel." *Whitman*, 754 F. App'x at 43. Rather, there is a wide range of arguments that, while reasonably available to counsel for the purposes of procedural default, were nonetheless "not 'significant and obvious' given the long-standing" posture of the courts "at the time," thus rendering counsel's failure to raise such arguments reasonable. *Id.* (quoting *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015)).

cases at the time of direct review reflected other defendants' raising the issue); *Thorn*, 659 F.3d at 233.

Further, to establish prejudice, a defendant must establish "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the defendant's] entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). A "claim of actual prejudice has validity only if an error … amounts to prejudice per se, regardless of the particular circumstances of the individual case." *Id.*; *see also, e.g., Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (holding that the question in determining actual prejudice—in the context of a complaint about an erroneous state court jury instruction—is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Finally, where there is no judicially cognizable cause and prejudice for the procedural default, a court may reach the merits of the defendant's claim only upon a showing of actual innocence. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) (explaining that the actual innocence exception is meant to avoid grave miscarriages of justice—"to see that federal constitutional errors do not result in the incarceration of innocent persons"). To meet this test, the "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quotation marks and citation omitted); *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence because "the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

## III.  Discussion

### A.  The Defendant Procedurally Defaulted His Claim

The defendant never appealed his conviction and, therefore, never raised his challenge to Count Seven on appeal. Accordingly, his claim is procedurally barred. The defendant can overcome this default only if he "can first demonstrate either 'cause' and 'actual prejudice,' or that he is 'actually innocent,'" *Bousley*, 523 U.S. at 622. He can do neither.

First, the defendant cannot claim that an appeal would have been futile under governing law.  The Supreme Court has never recognized that "futility" can constitute "cause" to excuse a procedural default, and indeed, it has twice stated that "'futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (internal quotation marks omitted) (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).  *Bousley* is sufficient to refute a claim that it would have been futile, even in the face of binding circuit precedent, for the defendant to have challenged the classification of his predicate offense.

Although a claim that is truly "novel"—where the law at the time of appeal did not provide counsel with a "reasonable basis" for the claim—can constitute "cause" to excuse a procedural default, *see Reed v. Ross*, 468 U.S. 1, 16-17 (1984), a challenge to the classification of a reckless offense does not qualify as such a claim. In determining whether a claim is "novel" for purposes of establishing cause for a procedural default, the relevant inquiry is not "whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986). The defendant had all of "the tools to construct" a challenge to the classification of a reckless offense before *Borden*. *Engle*, 456 U.S. at 133. Most courts interpreting *Leocal* had held that reckless offenses do not involve the use of force. *See United States v. Castleman*, 572 U.S. 157, 169 n.8 (2014) (collecting cases). After *Voisine v. United States*, 579 U.S. 686 (2016), several courts of appeals held that reckless offenses do involve a "use of force . . . against the person of another," but other courts of appeals held to the contrary. *Borden,* 141 S. Ct. at 1823 n.1, 2 (collecting cases). Given this landscape, a challenge to the classification of a reckless offense was not "novel." *See, e.g.*, *Dugger v. Adams*, 489 U.S. 401, 409-10 (1989) (finding that a claim was not novel where "the legal basis for a challenge was plainly available"); *Frizzell v. Hopkins*, 87 F.3d 1019, 1021 (8th Cir. 1996) ("If the tools were available for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier.") (internal quotation marks omitted); *see also United States v. Smith*, 241 F.3d 546, 548-49 (7th Cir. 2001) (holding that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was not novel because "the foundation for *Apprendi*" existed long before the decision itself was announced). In short, the defendant has provided no excuse for his failure to address the issue on appeal. This alone forecloses his claim now.

Nor can the defendant demonstrate prejudice. The defendant cannot credibly claim that he would not have pled guilty to a Section 924(c) charge had he known that *Borden* would have foreclosed a Section 924(c) charged for an assault that could be committed recklessly. As discussed below, New York Menacing in the Second Degree cannot be committed recklessly – a defendant must act intentionally.

Finally, the defendant cannot establish actual innocence. He admitted to being a member of Nine Trey and to shooting at rivals in the Barclays center in order to scare them. The factual record from the proceedings and the plea agreement alone foreclose any argument that the defendant is factually innocent.

## B.  The Holding in *Borden* Does Not Apply to New York Menacing in the Second Degree

Even assuming the defendant could establish cause and prejudice, his motion still fails because the holding in *Borden* does not apply to New York Penal Law Section 120.14.

Section 120.14(1) provides in relevant part: "A person is guilty of menacing in the second degree when: 1. He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 120.14 (McKinney). The New York Criminal Jury Instructions and Model

Colloquies (available at https://www.nycourts.gov/judges/cji/2-PenalLaw/120/art120hp.shtml) provide that:

> [A] person is guilty of Menacing in the Second Degree when he or she intentionally places or attempts to place another person in reasonable fear of physical injury [*or* serious physical injury *or* death] by displaying:
>
> . . .
>
> a deadly weapon
>
> . . .
>
> The following terms used in that definition have a special meaning:
>
> . . .
>
> A person acts INTENTIONALLY when that person's conscious objective or purpose is to cause a particular result or to engage in particular conduct. Thus, a person intentionally places or attempts to place another person in reasonable fear of physical injury [*or* serious physical injury] [*or* death] by displaying a deadly weapon [*or* dangerous instrument] [*or* what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm] when that person's conscious objective or purpose is to do so (citing NYPL § 15.05(1)).

Thus, unlike the underlying state statute at issue in *Borden*, which could be committed recklessly, that is not the case with New York Menacing in the Second Degree. It follows, then, that because Count Six of the Indictment "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" it is a proper predicate for a conviction under 18 U.S.C. § 924(c). *See* 18 U.S.C. § 924(c)(3)(A) ("For purposes of this subsection the term "crime of violence" means an offense that is a felony and--(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another.")

## IV.  Conclusion

Accordingly, because the defendant has not established cause or prejudice excusing his procedural default and because the Supreme Court's opinion in *Borden* is inapplicable to the defendant's count of conviction, his motion should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


by:  _s/_____
Michael D. Longyear
Jonathan E. Rebold
Assistant United States Attorneys
(212) 637-2223 / 2512

cc: Jeffrey Pittell, Esq. (by ECF)

Fuguan Lovick (Reg. No. 86356-054)
FCI Loretto
Federal Correctional Institution
P.O. Box 1000
Cresson, PA 16630