UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

FUGUAN LOVICK,

Defendant.

---

18 Cr. 834-05 (PAE),
22 Civ. 4552 (PAE)

OPINION &
ORDER

---

PAUL A. ENGELMAYER, District Judge:

This order resolves, and denies, a motion by defendant Fuguan Lovick for relief pursuant to 28 U.S.C. § 2255.  Dkt. 640 ("Motion").[1]

## I.      Background[2]

### A.      Offense Conduct, Plea, and Sentencing

Lovick was an associate of the Nine Trey Gangsta Bloods ("Nine Trey"), a violent set of the Bloods gang that, particularly in 2018 and 2019, was responsible for a significant number of public acts of violence in the New York City area, and also sold narcotics.  Lovick's central act in furtherance of Nine Trey occurred on April 21, 2018, in the Barclays Center in Brooklyn. Lovick arrived with six other gang members (and future co-defendants), one of whom was Daniel Hernandez, a rap artist known as "Tekashi 6ix 9ine," who was scheduled to sing the entrance song for a boxer who had a match that night.  While in a hallway in the Barclays

---

[1] The Court is docketing this motion both in Lovick's criminal case, 18 Cr. 834 (PAE), and in the civil case, 22 Civ. 4552 (PAE), opened following his filing of the § 2255 petition.  Docket citations here, unless otherwise indicated, are to the criminal case.

[2] The facts are drawn from Lovick's presentence report ("PSR"), the parties' sentencing submissions, the Court's remarks at sentencing, and the Court's later decision denying Lovick's application for compassionate release pursuant to 18 U.S.C. § 3582(c).

Center, Lovick and other Nine Trey members encountered the entourage of a rival rapper who

was a member of a different Bloods set.  Lovick, during the altercation, removed a gun he had

hidden in his shoe and fired the gun over the heads of the rival gang, spawning chaos.  In the

surveillance video capturing the episode, Lovick is seen holding up the Nine Trey hand sign.

Lovick was arrested by state authorities on May 6, 2018, and has been held in custody

since.  Lovick was transferred to federal custody in November 2018.  He was indicted along with

numerous Nine Trey members and associates; Superseding Indictment S6 18 Cr. 834 (PAE),

filed on January 31, 2019, charged 10 such defendants.  Dkt. 91 ("Superseding Ind't").  Lovick

was charged in two counts.  Count Six charged a violent crime in aid of racketeering ("VICAR"),

in violation of 18 U.S.C. §§ 1959(a)(3) and 2—specifically, that Lovick, for the purpose of

gaining entrance into and maintaining his position in Nine Trey, had, on April 21, 2018,

knowingly assaulted individuals with a dangerous weapon, and aided and abetted the same, in

that "Lovick fired a gunshot at rivals of Nine Trey upon encountering them at the Barclays

Center in Brooklyn, New York, in violation of New York Penal Law, Sections 120.14 and

20.00."  *Id.* ¶¶ 18–21.  Count Seven charged a violation of the firearms statute, 18 U.S.C.

§ 924(c), in connection with Count Six.  It alleged, in full, the following:

> On or about April 21, 2018, in the Southern District of New York and elsewhere,
> FUGUAN LOVICK, a/k/a "Fu Banga," the defendant, during and in relation to a
> crime of violence for which he may be prosecuted in a court of the United States,
> namely, the assault with a dangerous weapon, as charged in Count Six of this
> Indictment, knowingly did use and carry a firearm, and in furtherance of such crime
> did possess a firearm, and did aid and abet the use, carrying and possession of a
> firearm, which was brandished and discharged.

*Id.* ¶ 22 (citing 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2).

On May 9, 2019, Lovick pled guilty to Counts Six and Seven.  Dkt. 188 (transcript of

plea proceeding).  The plea agreement calculated a Stipulated Guidelines Range of 90 to 96

months with a mandatory minimum sentence of 84 months on Count Seven, which was required to run consecutively to the sentence on Count Six. The plea agreement also contained an appeal waiver with respect to sentences imposed of 96 months or below. On February 12, 2020, the Court sentenced Lovick to a below-Guidelines sentence of one month imprisonment on Count Six and 84 months on Count Seven, to be served consecutively, followed by a term of three years of supervised release. *See* Dkt. 423 (judgment).

Lovick did not appeal from his conviction or his sentence.

**B.      Lovick's Compassionate Release Motion**

On August 17, 2020, Lovick, counseled, moved for compassionate release, or a reduction of sentence, on grounds relating to the COVID-19 pandemic, under 18 U.S.C. § 3582(c). He argued that the factors supporting his release included an extended lockdown and other prison conditions, and that his ethnic background puts him at increased risk of contracting COVID-19 and developing a serious illness. Dkts. 523, 524. The Government opposed the motion. Dkt. 528.

On September 2, 2020, the Court denied the motion, on multiple grounds. Dkt. 530. It held that Lovick had not established the threshold requirement of extraordinary and compelling circumstances to justify release under § 3582(c). *Id.* at 4. It further held that it was unable to find that Lovick, if released, would not present a danger to the community. *Id.* at 5. Finally, the Court held, the 18 U.S.C. § 3553(a) factors, considered in a combination, did not favor Lovick's early release. The nature of circumstances of Lovick's offenses, the need for the sentence to promote respect for the law, the interest in specific deterrence, and the interest in public protection, the Court held, all supported the sentence imposed. *Id.* at 5–6.

**C.      Lovick's § 2255 Motion**

On June 1, 2022, Lovick moved under 28 U.S.C. § 2255 for relief from his Count Seven conviction under § 924(c). He contended that, under *Borden v. United States*, 141 S. Ct. 1817 (2021), the state offense (New York Penal Law 120.14) on which his VICAR conviction (Count Six) was based and to which the § 924(c) offense related does not qualify as a crime of violence. Dkt. 640. On August 18, 2022, the Government, responded, arguing that Lovick's challenge to Count Seven is procedurally defaulted and that the New York state offense underlying Count Six is a crime of violence. Dkt. 653 ("G. Mem."). On September 12, 2022, Lovick replied. Dkt. 656. On March 27, 2023, the Court invited counsel to submit letters on a separate issue: whether *United States v. Taylor*, 596 U.S. __, 142 S. Ct. 2015 (2022), has any bearing on whether the New York state offense at issue is a crime of violence. Dkt. 667. On April 3, 2023, the parties submitted such letters. *See* Dkt. 669 (Government); Dkt. 668 (defense).

## II.    Discussion

The briefing on the § 2255 motion raises two issues: whether *Borden* affords Lovick a meritorious basis to challenge his firearms conviction on Count Seven; and whether Lovick's claim to this effect is procedurally defaulted. The Court resolves those issues in turn, and then addresses the issue it raised *sua sponte*, relating to *United States v. Taylor*.

1.    On the merits, Lovick's challenge based on *Borden* fails. The crime in *Borden* that was alleged to be an Armed Career Criminal Act ("ACCA") predicate so as to trigger liability under the applicable federal firearms statute, 18 U.S.C. § 924(e), was a Tennessee conviction for reckless aggravated assault. The Supreme Court in *Borden* analyzed whether that statute—by its elements—necessarily involved the "use, attempted use, or threatened use of physical force against the person of another," so as to come within § 924(e)(2)(B)(i). 141 S. Ct. at 1822. The Tennessee statute defined the crime as "[r]ecklessly commit[ting] an assault" and

either "caus[ing] serious bodily injury to another" or "us[ing] or display[ing] a deadly weapon." *Id.* (citation omitted). The Court held that it did not, because the term "use of physical force" does not include offenses criminalizing reckless conduct. *Id.* at 1825. As the Court explained, the phrase "against another," as used to modify the statutory term "use of force," "demands that the perpetrator direct his action at, or target, another individual," whereas "[r]eckless conduct is not aimed in that prescribed manner." *Id.* Thus, the Court held, the ACCA provision "covers purposeful and knowing acts, but excludes reckless conduct." *Id.* at 1826.

In moving for § 2255 relief based on *Borden*, Lovick argues that New York Penal Law Section 120.14 "does not have an element which requires the actor to intend to cause physical injury to another person." Motion at 15.[3] The *mens rea* of this statute, he contends, "only requires the actor to intentionally place or attempt to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." *Id.* at 16. Lovick notes that he discharged the gun above the heads of the rival gang and "did not cause any injury, or death, to any person." *Id.*

*Borden* does not secure Lovick relief. The analysis in *Borden* was directed to whether the ACCA's "crime of violence" definition incorporates offenses with a *mens rea* of recklessness. By its express terms, however, the New York statute underlying Lovick's VICAR conviction requires intentional conduct. Its pertinent language states:

> [A] person is guilty of menacing in the second degree when: [1] [h]e or she *intentionally* places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon,

---

[3] Page numbering herein refers to the page number as docketed on ECF, not the page-numbering within the Motion, which, mid-motion, restarts at page 1.

dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.

N.Y. Penal Law § 120.14 (McKinney) (emphasis added). The statute does not state that it can be violated by reckless conduct. And the statute defines "intentionally" consistent with the discussion in *Borden*. *See id.* § 15.05 ("Intentionally": "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.").[4] Lovick does not cite any precedents construing § 120.14 to the contrary. *See, e.g., People v. Perry*, 19 N.Y.3d 70, 73 (N.Y. 2012) (in assessing menacing charge, considering whether defendant acted "intentionally"); *People v. Persen*, 185 A.D.3d 1288, 1292 (N.Y. App. Div. 2020) (same); *People v. Bryant*, 13 A.D.3d 1170, 1170 (N.Y. App. Div. 2004) (same); *see also People v. Bartkow*, 96 N.Y.2d 770, 772 (N.Y. 2001) (noting that menacing under § 120.14 requires "intent" to place another in reasonable fear of physical injury). Under the elements-based category approach, § 120.14 therefore is not disqualified from being a crime of violence under *Borden*.

To the extent that Lovick argues, factually, that his conduct on April 21, 2018 fell outside the scope of § 120.14 because he aimed his gunfire above the head of his rivals, that argument fails to secure him relief for three independent reasons. First, it has no bearing on the elements-based "crime of violence" inquiry. *See Borden*, 141 S. Ct. at 1822 ("Under th[e] by-now-familiar [categorical] method, applicable in several statutory contexts, the facts of a given case are irrelevant."). Second, Lovick's liability under § 120.14 did not turn on whether he intended his gunfire to strike another person. It turned on whether he "*intentionally* places or attempts to

---

[4] The New York State Criminal Jury Instructions and Model Colloquies is in accord. *See Criminal Jury Instructions & Model Colloquies: Menacing Second Degree*, N.Y. State Unified Ct. Sys., https://www.nycourts.gov/judges/cji/2-PenalLaw/120/art120hp.shtml (last accessed Apr. 25, 2023).

place another person in reasonable fear of physical injury . . . by displaying a deadly weapon."

N.Y. Penal Law § 120.14.  And in his guilty plea allocution, Lovick admitted facts that made out

this showing.  He stated that, upon being approached at the Barclays Center by "a large group of

people from another gang," he had "pulled out a gun and [] shot up in the air to scare them

away," Dkt. 188 ("5/9/19 Tr.") at 30, that he knew what he was wrong and that he was

committing a crime," *id.*, and that his conduct was an "assault," *id.* at 32; *see also id.* at 22

(stating that he had shot the gun "so that the people could back up").  Third, by failing to file a

direct appeal, Lovick has waived his right to challenge whether his plea allocution made out the

elements of the VICAR offense in Count Six, which was based on an underlying violation of

§ 120.14.  *See, e.g.*, *United States v. Peña*, 58 F.4th 613, 620 (2d Cir. 2023) ("In general, a

defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he

failed to raise on direct appeal." (citation omitted)); *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir.

2003).

  2. Although the point is academic in light of the fruitless nature of the challenge,

Lovick's challenge based on *Borden* is, in any event, procedurally defaulted, substantially for the

reasons cited by the Government.  *See* G. Mem. at 3–6.  A § 2255 challenge is not a substitute

for a direct appeal, and in general, a defendant may not bring under § 2255 a challenge that could

have been brought on direct appeal, because such a claim has been procedurally defaulted.  *See*

*Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Thorn*, 659 F.3d 227,

231 (2d Cir. 2011).  To overcome this procedural default, a defendant must demonstrate either

"cause" and "actual prejudice" or that he is "actually innocent."  *Bousley*, 523 U.S. at 622

(internal quotation marks omitted).  That is so even where a new substantive rule has been

announced, such that it would apply retroactively to non-defaulted challenges on collateral review. *See id.* at 617–24.[5]

Lovick does not claim actual innocence, and he does not satisfy either prong of the cause-and-prejudice standard. As the Government chronicles, at the time of Lovick's prosecution, which was initiated in 2018, there had long been a division of authority among the lower federal courts as to whether offenses capable of being committed with the *mens rea* of recklessness involved a "use of force . . . against the person of another." G. Mem. at 6. These decisions largely divided based on their assessment of how the decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004)—which had held that negligent conduct fell outside a substantially similar statutory definition as the elements clause, requiring the use of physical force against the person or property of another—applied in the context of offenses sounding in recklessness. Many such cases, prefiguring the holding in *Borden*, had held that reckless offenses do not involve the use of force. *See United States v. Castleman*, 572 U.S. 157, 169 n.8 (2014) (collecting cases).

In these circumstances, there was nothing novel about the argument that an offense that could be satisfied by a recklessness *mens rea* did not qualify as a crime of violence. It was available to Lovick to pursue on a direct appeal (or, earlier, before this Court). And Lovick does not identify any other cognizable cause for not having raised his present claim on a direct appeal. Quite the contrary, the self-evident reason for the counseled Lovick's not having done so is that New York Penal Law § 120.14, on its face, cannot be violated by non-intentional (that is, reckless) conduct. Thus, a direct-appeal argument following Lovick's February 2020 sentencing,

---

[5] *Borden* is undisputedly a "new rule," as it narrows the scope of a criminal statute, so as to exclude from the scope of § 924(c) the use or carrying of a gun in relation to a crime that could be committed recklessly. *See Bousley*, 523 U.S. at 620–21 (holding that the analogous decision in *Bailey v. United States*, 516 U.S. 137 (1995), which narrowed the scope of the term "use" in § 924(c), applied retroactively to cases on collateral review).

based on *Borden*'s precursors, would have been meritless, much as is Lovick's *Borden*-based argument today.

For largely the same reasons, Lovick cannot show prejudice from his not having raised a *Borden*-style challenge to Count Seven on direct appeal. As explained above, because *Borden* has no bearing on § 924(c) convictions based on New York Penal Law § 120.14, such a claim would have failed to secure Lovick any relief. *Cf., e.g., Moreno v. United States*, 100 F.3d 943, 943 (2d Cir. 1996); *Meregildo v. United States*, Nos. 16 Civ. 7968, 11 Cr. 576 (WHP), 2021 WL 1700655, at *6 (S.D.N.Y. Apr. 29, 2021).

3.    The Court, finally, commissioned briefing on whether *Taylor* has any bearing on whether New York Penal Law § 120.14 is a crime of violence, mindful that § 120.14, like the Hobbs Act, provides for attempt liability. The Court holds that it does not. The Supreme Court in *Taylor* held that the offense of attempted Hobbs Act robbery is not, categorically, a crime of violence because no element of that offense "requires proof that the defendant used, attempted to use, or threatened to use force." 142 S. Ct. at 2021. The Court noted that the act requirement of attempted Hobbs Act robbery is met when a defendant completes a "substantial step" towards the completed Hobbs Act offense of unlawfully taking or obtaining property by means of actual or threatened force. *Id.* at 2020. And because a completed Hobbs Act robbery can be completed by means of "threatened force"—as opposed to requiring the use of force—attempt liability, the Court noted, could be based on preparatory actions that did not themselves entail the use or threatened use of physical force. *Id.* at 2020–21. As an example of such a scenario, the Court noted, a defendant who intended and planned to rob a store, and who drafted a threatening note stating, "Your money or your life," and soon thereafter was apprehended before exposing that

9

note to others, could be found guilty of attempted Hobbs Act robbery even though he "never even got to the point of threatening the use of force against anyone or anything." *Id.* at 2021.

Section 120.14, however, is of a different character. It does not provide for liability based on threats. And therefore, the feature of attempted Hobbs Act robbery that proved fatal to the Government's application of § 924(c) in *Taylor* under the categorical rule—that the statute could be applied to attempts to make threats—is absent. And the elements of § 120.14 map those of a "crime of violence" under § 924(c). Section 120.14 requires a perpetrator to have "intentionally place[d] or attempt[ed] to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." The Second Circuit has held that the display of a firearm—or even an apparent firearm—in the course of a robbery satisfies the elements clause of ACCA, which is substantively identical to the elements clause of § 924(c)(3). *See Stuckey v. United States*, 878 F.3d 62, 70 (2d Cir. 2017) (the "display of what appears to be a firearm in the course of a robbery well exceeds the degree of violent physical force the ACCA requires" (alterations and citation omitted)).

As for the fact that § 120.14 provides for attempt liability, that also does not present an impediment to application of the categorical rule. That is because § 924(c)(3) itself provides for attempt liability. For this reason, the Second Circuit's decision in *United States v. Collier*, 989 F.3d 212 (2d Cir. 2021), is highly persuasive authority. The Court there held that attempted bank robbery in violation of 18 U.S.C. § 2113(a) is a crime of violence. The "crime of attempt," it noted, "requires that the defendant have intended to commit each of the essential elements of the substantive crime." *Id.* at 221. It reasoned:

> Attempted bank robbery under § 2113(a) requires that the defendant "by force, violence, or by intimidation . . . attempt[ ] to take" the property at issue. . . . Thus,

> attempted bank robbery is a categorical match for a crime of violence under the force clause of § 924(c)(3)(A), as the statute requires that both the completed crime and its attempt be effectuated "by force, violence, or by intimidation." 18 U.S.C. § 2113(a). In the context of § 2113(a), where attempt is defined as including an element of "force and violence," or "intimidation," there can be no question that conviction of attempt requires proof of attempted force or intimidation.

*Id.* Section 120.14(1) is of a piece with § 2113(a), in that each statute applies to a person who actually places a person in fear of bodily injury or attempts to do so.

## CONCLUSION

The Court accordingly denies Lovick's motion. The Court declines to issue a certificate of appealability, and certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 640 in 18 Cr. 834-5, and to close the corresponding civil case, 22 Civ. 4552 (PAE).


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: May 3, 2023
       New York, New York